*Guy Arms* vs. *Jonathan Burt* and *Ozeal Stoddard.*

That a conveyance to a man, his heirs and assigns, *so long as wood grows and water runs,* creates a fee simple.

That a writing which was probably intended as a reconveyance, but is not sealed or acknowledged, is wholly inoperative.

That it is erroneous to reject evidence of breach of condition and abandonment of lessee, if offered in connection with proof of reentry for condition broken.

That a levy upon *all the right, title and interest, in and to land,* of a particular description, is void.

THIS was an action of *ejectment* for a tract of land in *Brattleboro'*, tried upon the *general issue* in the County Court, where the following exceptions were allowed, which exhibit the questions raised before the court.

"*Windham County Court, September Term,* 1827.

"In this case it was admitted by the parties, that *Jonathan Burt,* previous to the 9th day of August, one thousand eight hundred and nineteen, was seized in fee simple of the land described in the plaintiff's declaration. On the same 9th day of August, the said *Jonathan* made and executed to *Erastus Burt,* his heirs and assigns, a lease of said premises, to hold as long as *wood grows and water runs,* under certain conditions, &c. which said lease is made a part of this case, and which lease was duly signed, sealed, and acknowledged, by the said *Jonathan,* and also recorded. After this, the said *Jonathan* and *Erastus,* on the 6th day of August, 1825, signed upon the margin of the record of said lease, a certain writing, not under seal, which is also made a part of this case. On the 12th day of September, 1825, the plaintiff, *Guy Arms,* attached said premises on a suit in his favor against said *Erastus,* on which he recovered judgment, and set off said premises on an execution, as will appear by certified copies of the record of the judgment, levy, and other proceedings in said suit, and which are also made a part of this case. The defendants then offered evidence to prove that the said *Erastus* neglected to fulfil and perform the conditions and stipulations in said lease mentioned, before the aforesaid 6th day of August, 1825, when said writing was signed by the parties on the margin of the record of said lease; and also offered to show that ever since the aforesaid writing the

Windham, Feb. 1828. } said *Erastus* has abandoned the prem-
*Arms* vs. *Burt et al.* } ises, and totally neglected to keep and per-
form any of the aforesaid conditions and stipulations in the same
lease contained; which said evidence, so offered, was objected
to by the plaintiff, and the court rejected the same.    The de-
fendants then requested the court to charge the jury—that the
plaintiff ought not to maintain this action against the defendants—
and also that the writing signed by the parties on the margin of
the record of said lease, is a good and sufficient surrender and
discharge of the right and title of the said *Erastus* to the afore-
said premises, and sufficient to revest the same in the said *Jona-
than*, his heirs, and assigns.    But the court did charge the jury
that the plaintiff ought to have and maintain this action against the
defendants, if they should find the said several papers to be genu-
ine.    And they did further charge the jury, that the aforemen-
tioned writing was not a good and sufficient surrender and dis-
charge of the right and title of the said *Erastus* to the aforesaid
premises, nor sufficient to revest the same in the said *Jonathan*,
his heirs, or assigns.    To all which decisions and charge, and re-
fusal to charge, the defendants on said trial excepted, and moved
that their said exceptions be allowed, and that the same pass to
the Supreme Court for a final determination, and that execution
be stayed."

It was agreed by the parties, as an amendment of the case, that
*Stoddard* was in possession when the suit was brought.

The conditions of the case, above referred to, are long and par-
ticular.    *Erastus* was to support said *Jonathan* and his wife, dur-
ing life, describing how ; also furnish a cow and horse ; also sup-
port his brother, *Hollis*, in a way particularly pointed out in said
lease ; also his sister, *Abigail*, for a time.    And, on said *Erastus'*
neglect to perform all these things, said lease to be void, and the
estate to revert to said *Jonathan*.    But on performance, he is
to have and hold, as long as *wood grows and water runs*.

Said writing upon the margin of the record was as follows :

"Know all men by these presents, that we *Jonathan Burt* and
" *Erastus Burt*, parties to this lease hereto annexed, have, and
" hereby do release, discharge, and exonerate each other, from
" all and every condition, provision, stipulation, or agreement

" herein or therein contained, and hereby $\Big\{$ <span style="float:right">Windham, Feb. 1828.</span>
" each of us to the other quit claim all our $\Big)$ <span style="float:right">*Arms vs. Burt et al.*</span>
" right, title, interest or demand in, or unto said conditions, pro-
" visions, or agreements, therein contained, hereby acknowledging
" each other to be mutually and completely discharged to all
" intents and purposes. Done this 6th day of August, 1825.

" Witness our hands,      " JONATHAN BURT.

" ERASTUS BURT."

The levy of the execution was un-exceptionable, except that the officer's description was as follows : to wit, " I did levy the said writ of execution on all the within named *Erastus Burt's* right, title and interest in and unto a certain tract or parcel of land, &c. described as follows :" Then, that it is the same land contained in said lease—Then gives a description of the land by metes and bounds.

Afterwards, speaking of what was appraised, the return says " appraised the premises."

*W. C. Bradley, for the defendants.* The defendants contend, that at the very time of the entry on the record, the lease had ex- expired and terminated.

I. *By avoidance.* 1. By the lease, in case of failure of performance on the part of the lessee, " the lease was to cease, to be void, and of no effect—and the estate of the lessee to cease and determine to all intents and purposes, notwithstanding any thing therein contained to the contrary." 2. The case finds, " that before the 5th day of August, the lessee had neglected to perform the conditions and stipulations of said lease." The first distinction is between a lease void and voidable. *A lease for years*, to be void on non performance of a collateral thing, becomes so, if the thing is not performed.—1 *Johns.* 266.— *Co. Lit.* 214. *b.*—*Shep. Touch.* 151.—*Id.* 153.—3 *Co. Rep.* 64, *b.*—2 *Com. Dig.* 352, 8; 6, 95, *b*—106, 48, *b.*—If, however, the remedy by entry is stipulated by the lease, then it is not void but voidable.—*Shep. Touch.* 154.— *Co. Lit.* 215, *a.*—*Com. Dig.* 352, tit. *Condition.* So too in case of rent, where party has remedy by distress. But a *lease for life*, to be void on non performance, is not so without entry, and therefore merely voidable. But a limitation of an estate for life

determines it without entry, and often it is difficult to distinguish a limitation from a condition.—*Shep. Touch.* 121. But entry is dispensed with in the following cases : 1. When the lesssor cannot come upon the land, and then he must claim. 2. When from the nature of estate, entry and claim would defeat other interests. 3. When lessor is in possession himself.

II. *The forfeiture was not waived.* After an estate has been once fully determined for forfeiture, it cannot afterwards be waived, because it has passed into the lessor.—*Com. Dig.* 356.—4 *Bac. Ab.* 220, 221. Therefore, the defendants contend that in this case the estate was ended by the failure of lessee, and had determined, and that no entry was necessary—That if it would have been necessary otherwise, yet, from the case the lessor shall be deemed to have been in possession, and so the entry dispensed with—and that the release, being of the covenants, created, or continued no estate, but only relinquished the rights of action. Besides, it was not under seal.—*Shep. Touch.* 323.

III. There was not even an equity remaining in the lessee.— This is not a mortgage which, strictly speaking, is for payment of money only.—5 *Wood. Convey.* 543. Nor is it a condition for which equity, will relieve the lessee.—4 *Wood.* 245, *n.*—9. *Mod.* 113. Nor do the statutes create an equity, for they apply only in cases where there is a sum due in equity.—*Stat. p.* 80, *s.* 76, or for non payment of rent.—*Stat. p.* 109, *s.* 2.

IV. The levy of the plaintiff by which they pretend title, is defective. It does not tell the nature of the estate levied upon. It is of all right title, &c. which are not, as such, proper subjects of levy. It refers to another record.—9 *Mass.* 94. There is not, therefore, the certainty required by law.—4 *Co.* 74.—2 *Lev.* 121.—11 *Mass.* 165.—8 *T. R.* 113, 124.

*Phelps, for the plaintiff.* The plaintiff claims a right to the possession of the premises by virtue of the levy of a writ of execution against one *Erastus Burt.* The defendants are in possession of the premises. There is no error in the decision and charge of the court in this case.

*Firstly.* The conveyance of *Jona. Burt* to *E. Burt* of the 9th of August, 1819, is not a mere lease of a term, but is a deed

assigning the whole estate in fee, and must, therefore, be reconveyed by deed, with.the legal requisites and formalities.—*New Com. Stat.* 167, *sec.* 5.—A lease is the conveyance of the use of lands for life, for years, or at will. It must be of a less term than the lessor has in the premises; for if it is of the whole estate,it is an assignment.—1 *Sw. Dig.* 131.—This instrument conveys the whole estate to the grantee, his heirs and assigns. It is,therefore,. an estate in fee simple. Now, a condition annexed to an estate in fee simple, that the tenant shall not *alien*, is void, as repugnant to the nature of the estate. For a power of alienation is an incident inseparably annexed to an estate in fee simple.—1 *Sw. Dig.* 94.—8 *T. R.* 61.

{ Windham, Feb..1826. Arms vs. Burt et al.

*Secondly.* But if this were not an estate in fee, in the hands of *Erastus Burt,* but merely a lease of a term, such estate as he has may be taken in execution, and such taking will be no alienation. The common law always looks nearly into these conditions, covenants, or provisos, &c. devising the term—dying intestate—the estate taken on execution,and the like. The rule on the subject is, that none of these amount to an assignment, or was a breach of the condition.—3 *Wil. R.* 234.—2 *B. R.* 766.—8 *T. R.* 57. —And this rule cannot prejudice *Jonathan Burt* at all, for he has upon this instrument a three fold remedy. 1. From privity of estate, he may distrain at common law. 2. He may have his action of debt against *E. Burt.* 3. He may bring his bill and have his reasonable support decreed him, or in default thereof, obtain a decree of forfeiture against the deed.—3. *Wil. R.* 234.

*Thirdly.* The marginal memorandum on the record of the deed from *Jona.* to *E. Burt,* is void, so far as it attempts a conveyance of the estate ; because the estate of *Erastus Burt* is an estate in fee, and can only be reconveyed by deed.—*Stat.* 167, *sec.* 5.—Or, if it be viewed as the reassignment of a lease by the lessee, it is for more than one year, and, therefore, void, because not by deed, and not acknowledged and recorded.—*Stat.* 172.— But,

*Fourthly.* This marginal memorandum does not attempt a reconveyance of the estate ; but purports nothing more than a relinquishment or discharge of personal covenants, as 1. *Jona. Burt*

discharges *E. Burt* from the expressed conditions, such as maintenance, &c. and this destroys those conditions.—3 *Com. Dig.* 132, tit. *condition*, (3.)—*E. Burt* discharges *J. Burt* of his implied covenants in said deed, arising from the words "demise and grant" therein contained; for these words raise a covenant in law, by which *E. Burt* might maintain his action of covenant against *J. Burt*, the lessor, if evicted by lawful title.—1 *Sw. Dig.* 355.

*Fifthly.* If a written conveyance, without deed, will not effect a reconveyance of this estate, much less will any voluntary surrender, without writing, effect it, notwithstanding any pretended breaches of condition. It is an attempt that the statute is designed to defeat. The creditors of *E. Burt* have the right to have the pretended breaches of condition investigated by a legal tribunal; and if broken, they have the right, as *E. Burt* would have, to redeem the estate, and secure their interest, by paying a reasonable compensation in *equity*. A deed cannot be discharged or revoked by parol—*Phil. Ev.* 444.—The evidence offered, therefore, was properly rejected.

*Sixthly.* The marginal writing of the 6th of August, 1825, did not effect a surrender of the estate of *E. Burt* to *J. Burt*, and his heirs, &c. 1. Because a surrender is the resignation of a particular estate, for life, or for years, to him in the immediate reversion, or remainder;—*Co. Lit.* 338, *a*, and this by the common law might be made without deed or livery.—*Co. L.* 338 *a*.—2 *Rol.* 495.—But by the *stat.* 29 *Car. II.* 3, "no lease, estate or interest, &c. shall be surrendered, &c. unless by deed," &c.—6*th Com. Dig.* tit. *surrender (C.)* 314.—Our statutes, we have seen, are also to the same effect.—167, 172.—2. By the common law also, an estate which lay in grant, and could not be *created* without deed, could not be *surrendered* without deed.—*Co. Lit.* 338, *a.* The estate of *E. Burt*, therefore, as it could not be *created* without deed, under the operation of our laws, so even by the principle of the old common law, operating upon our statute-mode of conveyancing it could not have been *surrendered* without deed.

*Lastly.* A voluntary conveyance, or reassignment of the estate from *E. Burt* to his father, without consideration, would have

been void as against creditors.—*Stat.* 171, sec. 14.—It is a general principle, that no man has such power over his own property, that he can dispose of it to defeat his creditors, unless for consideration; and the statute imputes a constructive fraud irresistibly conclusive in favor of *bona fide* creditors, against mere gratuitous conveyances.—— 1 *Sw. Dig.* 281.—*Amb. R.* 596.

HUTCHINSON J. delivered the opinion of the court. The plaintiff's title, being by virtue of a levy of an execution in his favor against one *Erastus Burt*, the great questions that arise are, whether *Erastus* had any title that could pass by levy? and whether this levy is sufficient to vest that title in the plaintiff? The case allowed shows the title to the premises once in *Jonathan Burt*, the defendant, and also, that, whatever title *Erastus Burt* had at the time of the levy, he derived from said *Jonathan*, by virtue of the lease referred to in the case.

Upon the trial at the county court the counsel for the defendant rested their defence principally upon the writing signed by said *Jonathan* and *Erastus* in the margin of the record of said lease. This was relied upon as a surrender by *Erastus* of the lease, and all his interest derived from it, to said *Jonathan*. We are now called to decide the legal effect of that writing. But the nature of the lease must be first understood.

The lease is not a lease for years merely; but conveys a present fee, determinable upon the non-performance, by *Erastus*, of the conditions and duties named in the lease on his part to be performed. It has the formalities of a deed, signed, sealed, witnessed and recorded. It runs to him, his heirs, and assigns; and continues so long as *wood grows and water runs.* Those terms extend as fully beyond the use of land, as the term *forever.*

But this title was to cease, and the land revest in *Jonathan*, upon the failure of *Erastus* to perform the stipulations on his part. Now, what should be the effect, upon this lease, of the writing in the margin of the record, signed by the parties to the lease?

It probably is not what was intended by the parties. It is not a conveyance back of the estate, for it has no seals nor acknowledgment. Nor can it be a discharge of the covenants of *Erastus*, for it contains no consideration. None is pretended but mutual-

Windham, Feb. 1828. } ity, and that does not exist. Nothing pas-
Arms vs. Burt et al. } ses, or is discharged, from Erastus to Jon-
athan, to stand as a consideration for the discharge of Jonathan's
claim on the covenants of Erastus. This writing, as it now ap-
pears, must be wholly inoperative. It can neither be a surrender
nor discharge of the title of Erastus, nor discharge of his cov-
enants. Had it been so executed as to reconvey the estate
to Jonathan, that would have formed a good consideration to sup-
port the same instrument, as a disharge from Jonathan to Eras-
tus of his covenants.

The case shows that the defendants, on trial, offered to prove a
failure of Erastus to perform the conditions of said lease, on his
part, before said writing in the margin was executed, and also that
ever since that time, he has wholly abandoned the premises, and
neglected every stipulation of the lease. This was rejected by the
court, and probably ought to have been admitted; it certainly
ought, if it had been offered in connexion with evidence to show
that said Jonathan had re-entered upon the premises for a breach
of condition. The nature of the lease being as above described,
Jonathan was not obliged to re-enter; but might stand aloof and
rely upon his remedy upon his covenants against Erastus. Or if
he chose to re-enter upon breach of the condition, he might do so,
and thereby the estate would revest in him; and Erastus be no
longer liable for that support he had covenanted in the lease.
And the recovery of Jonathan upon his covenants in such case,
would only be for the damage he sustained before his re-entry.
But it seems Jonathan was in possession before this suit was
brought. Probably, that might have been urged as a sufficient
re-entry to revest the estate.

Now, if such an estate as Erastus had in the premises be liable
to levy of execution at all, the plaintiff, by his levy, could gain no
better or greater estate than he found in Erastus. That is, a pres-
ent estate in fee, to hold upon the performance of that multifari-
ous condition; and, on failure so to perform, lose the estate whol-
ly, by its reverting to said Jonathan.

As the merits of this part of the case have not been tried at all,
a new trial must be granted.

An objection is now raised to the levy under which the plain-

tift claims to have obtained the title of *Eras* { Windham, Feb. 1828 *tus Burt.* This passed *sub silentio* at the } *Arms* vs. *Burt et al.* trial;but as the case is drawn up,this question is now fairly presented. As a new trial is granted,we are disposed to inform the parties what views the court entertain upon this point also.

Upon recurrence to the levy, we find that the officer did not levy upon the land, but upon the right, title and interest of *Erastus Burt* in and unto the land. The land itself is afterwards well described; and the officer returns that the appraisers appraised the premises. Yet the word *premises* must mean what was levied upon, which we find to be *Erastus Burt's* interest in the land. The levy should have been upon the land itself, and the appraisal should have been of the land itself, subject to such an incumbrance, describing it particularly.

As the levy is, we may ask, what interest had *Erastus* in the land ? What did the sheriff suppose it to be ? What did the appraisers suppose it to be ? The learned counsel here in court differ much about this interest ; and how can it be ascertained how the appraisers viewed it ?

In the case of *Elijah Paine* vs. *Lindley Webster, et al.* decided at *St. Albans,* on the present circuit, [*See p.* 101 *of this volume,*] a similar question was raised and very fully considered, and the levy considered void. We consider this levy void also. A new trial is granted.

*J. Phelps,* for plaintiff.

*Wm. C. Bradley,* for defendant.